914 So.2d 1217 (2005)
Roneal HUMPHREY, et al., Plaintiff-Appellant
v.
Gerald D. BALSAMO, Defendant-Appellee.
No. 40,200-CA.
Court of Appeal of Louisiana, Second Circuit.
November 8, 2005.
Rehearing Denied December 8, 2005.
*1218 Anthony J. Bruscato, Monroe, for Appellant.
Hudson, Potts & Bernstein, L.L.P., by Charles W. Herold III, Monroe, for Appellee.
Before GASKINS, PEATROSS and DREW, JJ.
DREW, J.
The primary issue here is the owner's responsibility for plaintiffs' injuries sustained when they were rear-ended at a stop light by the owner's stolen van. The plaintiffs (RoNeal Humphrey, Laterrance Williams, Rickey Humphrey, and Rodney McDaniel) sued Gerald Balsamo, owner of the van, contending Balsamo knew or should have known his van was likely to be stolen. Driving Balsamo's van, the thief rammed plaintiffs' car from behind while it was stopped at a red light. The crook then fled the scene and was never apprehended. For the following reasons, the *1219 judgment dismissing plaintiffs' action against Balsamo is affirmed.

FACTS AND TESTIMONY
An employee at the Holsum Bakery in Monroe for eleven years, Balsamo arrived at work on Friday, April 25, 2003, at 4:30 a.m. Instead of parking in the provided fenced lot, he parked his vehicle across the street from the main office on the side of the maintenance building near the railroad tracks. According to Balsamo, he locked the van in which he kept a spare set of keys and went in to work. About 2:00 p.m. he discovered the vehicle missing, reported the theft to the police, and notified his insurance company. That night, a Monroe policeman informed him the van had been recovered but had been totaled in an accident.
Balsamo's employer provided a fenced parking area for employees who parked in that lot and in other locations. Balsamo testified the employee parking lot had a gate that never closed and gave unrefuted testimony that the surveillance cameras were not present at the time of this theft. Balsamo stated that the purpose of the surveillance camera was to prevent people from driving away from the thrift shop without paying for the bread.
Balsamo admitted he parked outside the fenced parking lot in an area nearer where he was working and that it was common for employees to park at that location, which was not visible from inside the building. Contrary to plaintiffs' contention that absence of broken glass showed no forced entry was made into the van, Balsamo stated the driver's side window was jammed down with an interior pin broken so that the window could not be rolled up. Balsamo acknowledged that he had heard talk of previous vehicle thefts and another incident of vandalism to employees' vehicles, but that he could not remember the facts of the earlier occurrences or when they occurred. Further, he had no reason to believe he would be the victim of car theft that day.
Monroe policeman M.C. Tucker testified that the Holsum Bakery was located on South Grand Street near Borden's, a milk distribution site, and the railroad tracks. During his twelve years as a policeman, Tucker had investigated theft or break-ins of vehicles in that area a "few" or "several" times. Tucker was familiar with the Holsum parking lot across South Grand from the bakery and had observed Holsum employees parking on both sides of the street and on Gordon Avenue behind the bakery. The officer testified that when he arrived around 2:00 p.m. to investigate the stolen van, Balsamo told him the vehicle was taken between 9:00 a.m. and 1:00 p.m. and the keys were in the unlocked car under the mat on the floorboard. Tucker could not recall independently exactly where he was told the vehicle had been parked. On cross-examination, Tucker acknowledged he had no independent memory of the incident and that his report contained no indication the car had been unlocked and nothing about the presence or absence of broken glass.
At trial Balsamo explained that he and his wife were sharing one vehicle and that sometimes his wife came to the bakery to pick up their vehicle. Having two sets of keys, Balsamo retained one set while the couple kept the other in the van in a "cubby" like a glove compartment. Tucker testified Balsamo did not tell him the keys were left in the vehicle for his wife to pick it up.[1]
*1220 A union representative at Holsum, Balsamo acknowledged that he had attended meetings prior to the theft in which employees had sought more secure parking since there had been incidents during the day and night. Balsamo testified he was not aware of the employees seeking security guards but knew they wanted better lighting and similar measures.

REASONS FOR JUDGMENT
The trial court relied upon the rule in Louisiana that leaving the ignition keys in an unattended auto does not of itself constitute negligence on the part of the owner who owes no duty to the public at large against the risk of a thief's negligent operation of the stolen vehicle. Racine v. Moon's Towing, 01-2837 (La.5/14/02), 817 So.2d 21. The trial court found that the negligence of the thief was the intervening cause of the plaintiffs' injuries.

DISCUSSION
In plaintiffs' view, the trial court never reached the question of Balsamo's negligence; therefore, the manifest error standard does not apply and this court should make a de novo review. Balsamo urged that the standard set out in Rosell v. ESCO, 549 So.2d 840, 844-845, (La.1989), is appropriate in this dispute.
It is well settled that a court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong," and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. The appellate review of fact is not completed by reading only so much of the record as will reveal a reasonable factual basis for the finding in the trial court, but if the trial court or jury findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. In applying the manifestly erroneous  clearly wrong standard to the findings below, appellate courts must constantly have in mind that their initial review function is not to decide factual issues de novo.
When findings are based on determinations regarding the credibility of witnesses, the manifest error  clearly wrong standard demands great deference to the trier of fact's findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. Where documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness's story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. But where such factors are not present, and a factfinder's finding is based on its decision to credit the testimony of one of *1221 two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong.
(Citations and footnotes omitted.)
Plaintiffs are not entitled to recover regardless of this court's type of review. The plaintiffs' position is that the bakery was located in such a "high crime area" that it was highly foreseeable that Balsamo's vehicle would be stolen which made Balsamo negligent and responsible for the plaintiffs' injuries. The record does not support that contention.
Unfortunately, in today's society, a huge portion of Louisiana now can be viewed as a high crime area because crime is apt to and does occur in any location. Many recall fondly the days when keys were routinely "stored" in the ignition and houses were left unlocked. Commenting on the wisdom of those who continue such practices is not necessary to resolve this matter.
While acknowledging that he sometimes left his vehicle unlocked, Balsamo was adamant that he locked his van the day of the theft, notwithstanding the testimony of the investigating officer who admitted he had no independent recall of the event and he had not noted the car was unlocked in his report. Both the investigating officer and Balsamo stated that Holsum employees commonly parked in both designated parking and in other locations.
In DeCastro v. Boylan, 367 So.2d 83 (La.App. 4th Cir.1979), writ denied, 369 So.2d 458 (La.1979), the car was stolen shortly after it was parked with the keys left in the ignition at a construction site. The court relied upon the "well-established rule in Louisiana" that leaving the ignition keys in an unattended auto does not by itself constitute negligence on the part of the owner who owes no duty to the publish against the risk of a thief's negligent operation of the vehicle.
Plaintiffs' reliance on Marceaux v. Gibbs, 96-2839 (La.9/9/97), 699 So.2d 1065, is misplaced. Marceaux involved damages caused when a trustee prisoner working in a municipal work program escaped in a town-owned car in which a town employee had left the keys. An untrained town employee supervising the prisoners permitted them to work outside his line of sight. That case involved application of the rule that custodians of prisoners have a duty to manage prisoners so that the public is prevented from being harmed by negligent acts of prisoners in the process of escaping. This matter is factually and legally distinguishable from the present dispute.
Balsamo admittedly left a set of keys in the vehicle, parked outside of the designated parking lot, had knowledge of some prior thefts and vandalism, and had sought better security for the parking. Those acts do not make him liable for injuries caused by someone who stole and drove his vehicle without authorization. The cause of plaintiffs' injuries was the thief's deliberate act of stealing Balsamo's van which he/she negligently rammed into the rear of the vehicle occupied by unfortunate plaintiffs. Racine v. Moon's Towing, supra.

DECREE
The judgment of the trial court is AFFIRMED at plaintiffs' costs.
APPLICATION FOR REHEARING
Before GASKINS, CARAWAY, PEATROSS, DREW, and LOLLEY, JJ.
Rehearing denied.
NOTES
[1] In brief, the plaintiffs stated that Balsamo gave contradictory testimony at his deposition by stating that he expected his wife to pick up the van that day. Although referred to at trial, we do not find that the deposition was introduced into evidence. Although the deposition was not considered by this court, we note that the plaintiffs' allegations of inconsistent statements are incorrect, as Balsamo was clear on both occasions that he was not expecting his wife to pick up the van the day of the theft.