997 So.2d 8 (2008)
Kathryn Reddell KNICELY, et al., Plaintiffs-Appellants
v.
XYZ INSURANCE COMPANY, et al., Defendants-Appellees.
No. 43,250-CA.
Court of Appeal of Louisiana, Second Circuit.
September 17, 2008.
Rehearing Denied October 16, 2008.
Sturgeon & Boyd by Lauri G. Boyd, John Sturgeon, Ferriday, for Appellants, Kathryn Reddell Knicely, Blair Elizabeth Knicely, Lauren Elayne Knicely and Lajean Corbett.
Stafford, Stewart & Potter by Russell L. Potter, Andrew P. Texada, Alexandria, Samuel T. Singer, Winnsboro, for Appellees, Sentry Select Insurance Co. and Waller-Singer Chevrolet, Inc.
*9 Phelps, Dunbar, LLP by Christopher R. Teske, New Orleans, for Appellee Sentry Select Insurance Co.
Lyndell Scott, for Appellee, In Proper Person.
Before WILLIAMS, STEWART, GASKINS, CARAWAY, and DREW, JJ.
CARAWAY, J.
This action presents a tragic case of death and injury caused by criminal conduct. The plaintiffs contend that this criminal conduct was facilitated by defendant's contributing act of negligence. The defendant/car dealership's SUV was stolen off its sales lot, and the thief later crashed it into the plaintiffs' family vehicle. Reviewing the matter on the dealership's motion for summary judgment, the trial court dismissed plaintiffs' claim that defendant's act of leaving the vehicle unlocked with the keys in the ignition amounts to fault for the loss. Finding that no material fact issues exist and that the defendant and its insurer are entitled to a judgment of dismissal as a matter of law, we affirm.

Facts
On June 3, 2004, Lyndell Scott stole a 1997 Chevrolet Tahoe from the defendant, Waller-Singer Chevrolet, Inc., at its dealership in Winnsboro, Louisiana. For purposes of this summary judgment ruling, the facts indicate that the keys were left in the vehicle. While driving the stolen vehicle, Scott crossed the center line of the highway and collided with a vehicle being driven by Kathryn Reddell Knicely. The passenger in this vehicle, Dorris Kathryn Knicely, who was Kathryn's mother, died as a result of the collision.
The Knicely family (Kathryn Reddell Knicely, Blair Elizabeth Knicely, and Lauren Elayne Knicely) and Lajean Corbett, administrator of the succession of Doris Knicely, filed suit for damages against Scott, Waller-Singer Chevrolet, and its insurer. They alleged that the Tahoe was left out of the vehicle line with the doors unlocked and the keys in it. The dealership allegedly had prior incidents of theft and thus was aware of the risk that someone might steal a vehicle from the lot. Nevertheless, its policy for locking vehicles and securing keys at the close of business was not followed on the night of the accident.
Waller-Singer Chevrolet and its insurer filed a motion for summary judgment. They asserted that "[u]nder Louisiana law, Waller-Singer Chevrolet is not responsible for the injuries and damages caused by the criminal acts of Lyndell Scott." In an affidavit, the dealership's president, Wayne Waller, attested that the Tahoe belonged to the dealership, that Scott was not an employee of the dealership and was not authorized to drive the Tahoe, and that Scott or some unknown person took the Tahoe from the lot without permission.
In opposing the motion, the plaintiffs offered numerous exhibits. These included various records and memoranda from Waller-Singer, depositions of the dealership's president and employees, police officers' depositions and investigatory records pertaining to both this accident and other incidents of theft at the dealership, security and loss prevention information, and affidavits from experts in safety and security. Plaintiffs argued that this evidence showed that prior thefts, inadequate key control efforts, and lax security measures by the dealership made the accident foreseeable.
Summary judgment in favor of the defendants was rendered by the trial court on August 21, 2007. According to the reasons for judgment, which the record supports, there was no dispute that Scott stole the Tahoe from the dealership's lot. The trial court concluded that the Knicelys' *10 damages were caused by Scott's deliberate acts of stealing the vehicle and then crossing the centerline of the highway while driving the stolen vehicle. In the trial court's opinion, neither the prior incidents at the dealership nor the expert opinions changed the conclusion that the plaintiffs' injuries were caused by the thief's deliberate acts.
The plaintiffs now appeal the summary judgment dismissing their claims against the dealership and its insurer.

Discussion
Summary judgments are subject to de novo review on appeal under the same criteria used by the trial court in determining whether summary judgment is appropriate. Jones v. Estate of Santiago, 03-1424 (La.4/14/04), 870 So.2d 1002. Thus, we determine whether there is a genuine issue of material fact and whether the mover is entitled to judgment as a matter of law. Id. Genuine issues are those about which reasonable persons could disagree. Id.; Smith v. Our Lady of the Lake Hospital, 93-2512 (La.7/5/94), 639 So.2d 730. When the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law, summary judgment shall be rendered. La. C.C.P. art. 966(B); Jones, supra.
The mover has the burden of proving that summary judgment should be granted. Racine v. Moon's Towing, 01-2837 (La.5/14/02), 817 So.2d 21. This burden requires the movant to show an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. La. C.C.P. art. 966(C)(2). If the adverse party then fails to produce factual support sufficient to show that he will be able to satisfy his evidentiary burden at trial, there is no genuine issue of material fact. Id. As explained by La. C.C.P. art. 967(B), when a motion for summary judgment is properly made and supported, the adverse party may not rest on the allegations or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial. Jones, supra.
Regarding unattended motor vehicles, the Louisiana Highway Regulatory Act[1] has long provided the following statutory rule:
No person driving or in charge of any motor vehicle shall permit it to stand unattended without first stopping the motor, locking the ignition, removing the key, and effectively setting the brake thereon, and, when standing upon any grade, turning the front wheels to the curb or side of the highway.
La. R.S. 32:145.
Considering this statutory provision in a 1964 decision, this court affirmed summary judgment dismissing the defendant/owner of a vehicle stolen from the parking lot of a bar with the key left in the ignition. Call v. Huffman, 163 So.2d 397 (La.App. 2d Cir. 1964), writ denied, 246 La. 376, 164 So.2d 361 (1964). The plaintiff sued the vehicle's owner after the thief, allegedly driving under the influence of alcohol, later rammed the plaintiff's auto. The court rejected plaintiff's claim despite the statute, finding the causal connection between the violation and the resulting accident too attenuated.
In Roach v. Liberty Mutual Ins. Co., 279 So.2d 775 (La.App. 1st Cir.1973), writ denied, 281 So.2d 756 (La.1973), the plaintiff's claim was also dismissed by summary judgment. A vehicle leased to defendant was involved in a collision with the plaintiff's *11 vehicle. At the time of the accident, an unknown person was driving the leased vehicle. In an affidavit, the defendant stated that the vehicle was taken without permission while parked and left unattended on the street. In affirming the summary judgment, the appellate court noted that its opinion was:
[B]ased on the well established rule in Louisiana that the leaving of ignition keys in an unattended automobile does not of itself constitute negligence on the part of the owner and he owes no duty to the public at large against the risk of a thief's negligent operation of the automobile.
Id. at 777.
In rejecting a negligence per se claim in a similar case, the court in DeCastro v. Boylan, 367 So.2d 83, 84 (La.App. 4th Cir. 1979), writ denied, 369 So.2d 458 (La. 1979), gave a more thorough explanation of this issue under Louisiana's duty-risk analysis, as follows:
The application of a "duty-risk" standard to these facts would not change the result of this case. In Pierre v. Allstate Insurance Co., 257 La. 471, 242 So.2d 821 (La.1970), the Supreme Court applied the duty risk concept of tort responsibility. Under this approach it must be determined if the duty was designed to protect the plaintiff from the type of harm arising in this matter. See Crowe, The Anatomy of a Tort, 22 Loy. L.Rev. 903. The courts in the majority of jurisdictions which have statutes prohibiting the leaving of keys in unattended automobiles have construed the purpose of these laws to be the protection of automobile owners or as an aid to police officers. They have not held its purpose to be the protection of third parties from the negligent operations of thieves. See, Note, 22 La.L.Rev. 886 and cases cited therein. The purpose of the subject Louisiana statute appears to have been intended to prevent the theft of vehicles from the public streets and roadways.
Finally, in 2002, the supreme court applied the same principle in Racine v. Moon's Towing, supra. Hunter Racine, his brother, and two other teenagers trespassed on private property belonging to a moving and storage company managed by defendant. A flatbed truck with mechanical problems was located on the property. The truck was locked but the windows were partially open. The key was in the ignition. One of the boys broke into the truck and started it. Hunter sustained fatal injuries after the truck began moving forward while he was standing on the running board and reached into the truck to try to shut it off. Hunter's parents filed suit against defendant, who then filed for summary judgment, arguing that the boys' deliberate acts were the sole cause of the accident. The motion was denied, and the appellate court denied defendant's writ. The supreme court granted certiorari and reversed the lower courts. The supreme court cited Roach, supra, for the principle that merely leaving the keys in a vehicle does not in and of itself make the owner liable for injuries caused by a person who uses the vehicle without authorization. Thus, the court concluded that Hunter's death was not caused by defendant leaving the keys in the truck, but by the teenagers' deliberate acts of breaking into the locked truck and starting the engine.
Discussing Louisiana's duty-risk analysis in Meany v. Meany, 94-0251 (La.7/5/94), 639 So.2d 229, 233, our supreme court stated:
A threshold issue then in any negligence action is whether the defendant owed the plaintiff a duty. This issue is a legal question for the court to decide.
When a plaintiff articulates a general rule or principle of law that protects his *12 interests, it is necessary for the court to determine whether the rule is intended to protect him from the particular harm alleged, an inquiry which involves both the duty and causation elements of the negligence formulation. The court must make a policy determination in light of the unique facts of the case. Thus, the duty-risk analysis requires the court to take into account the conduct of each party as well as the particular circumstances of the case. Socorro v. City of New Orleans, 579 So.2d 931, 938 (La. 1991). In determining whether to impose a duty in a particular situation, the court may consider various moral, social, and economic factors, including whether the imposition of a duty would result in an unmanageable flow of litigation; the ease of association between the plaintiff's harm and the defendant's conduct; the economic impact on society as well as the economic impact on similarly situated parties; the nature of the defendant's activity; moral considerations, particularly victim fault; and precedent as well as the direction in which society and its institutions are evolving. Pitre v. Opelousas General Hospital, 530 So.2d 1151, 1161 (La.1988); William E. Crow, The Anatomy of a Tort, 22 Loy. L.Rev. 903 (1976).
The above cases involving unlocked vehicles were summary judgment rulings where the courts rejected the plaintiffs' claims, finding either no duty on the part of the vehicle's owner or the absence of legal cause, since the purpose of any duty for locking the vehicle, statutory or otherwise, does not include within its scope the protection of a third-party injured by a thief. The theft in this case did not involve an unattended vehicle on a public street. Therefore, the existence of a legal duty under La. R.S. 32:145 is questionable. In the absence of any statutory duty, the "no duty" analysis given in some of the above cases requires this court to affirm the dismissal of the plaintiffs' claims. In light of the factors set forth in Meany v. Meany, supra, no duty that would require the vehicle's owner to remove the key from an automobile on his private property has ever been imposed by any Louisiana court.
Moreover, even if we assume a duty placed upon the defendant because of any implication of the car-lock statute and its purpose, the analysis of the issue of legal cause also allows for summary judgment in this case. In the Supreme Court's important early ruling in Hill v. Lundin & Associates, 260 La. 542, 256 So.2d 620, 622 (1972), the court observed:
If we assume that the defendant was under a duty not to leave the ladder leaning against the house because of an unreasonable risk of harm, the breach of that duty does not necessarily give rise to liability in this case. Although the defendant would owe a duty to protect certain persons under certain circumstances from this risk, it is not an insurer against every risk of harm which is encountered in connection with the ladder.
With a similar analysis under the undisputed facts of this case of theft and reckless driving, any duty to lock this vehicle did not include within its scope of protection the risk resulting from Scott's theft and recklessness.

Conclusion
For the reasons stated, the summary judgment of the trial court is affirmed. Costs are assessed against the appellants.
AFFIRMED.
STEWART, J., dissents and assigns written reasons.
WILLIAMS, J., dissents for the reasons assigned by J. STEWART.
*13 STEWART, J., dissenting.
The majority opinion affirming a summary judgment in favor of the defendant, Waller-Singer Chevrolet, Inc., is based on jurisprudence which holds that leaving the keys in an unattended automobile does not constitute negligence by the owner, who owes no duty to the public to protect against the risk of a thief's negligent operation of the vehicle. The cases cited by the majority all involved summary judgments. But the majority makes no reference to Humphrey v. Balsamo, 40,200 (La. App. 2d Cir.11/08/05), 914 So.2d 1217, this court's most recent application of the jurisprudential rule at issue and the case relied on by the trial court in granting summary judgment. It is notable that Humphrey went to trial and was affirmed based on a complete record. The court now, with little consideration of the specific facts and circumstances of this case, denies the Knicelys the opportunity of proving their case before a trier of fact. The majority's decision calcifies the jurisprudential rule of law, making it applicable in every situation and precluding any consideration of facts that may establish some degree of negligence on the part of an automobile owner under a comparative fault analysis.
Neither Humphrey, supra, nor the cases cited in the majority opinion involved a theft of a vehicle from a car dealership. Here, the facts are that Waller-Singer, an automobile dealership, had a history of theft. In response, it instituted a key control policy and procedure. The theft of the Tahoe left out of line at the close of business suggests that the key control procedure was not followed on the date of the tragedy. Genuine issues of material fact remain as to how the thief obtained access to the Tahoe before crashing into the Knicely vehicle, causing injury, and killing Doris Knicely. Resolution of these issues may point to some degree of fault on the part of Waller-Singer for which it could be held liable.
The prior instances of theft and vandalism at Waller-Singer provided notice that it was a target of such crimes, unlike individuals who are the victims of random instances of theft of their personal vehicles. An individual who leaves his vehicle unlocked does not expect that it will be of any particular interest to the public. However, a car dealership leaves its inventory on display to entice the public and draw customers. It is not uncommon to see potential buyers browsing lots after business hours. The unique nature of a car dealership, which invites the interest of the public, as opposed to an individual owner of a vehicle, raises considerations that were overlooked by the majority opinion and that weigh against the easy fit, in this instance, of the general rule that an owner who leaves the keys in an unattended automobile owes no duty to the public to protect against a thief's reckless driving.
Considering the nature of the car dealership business and the history of theft and vandalism at Waller-Singer, a duty exists to secure the automobiles on the lot by locking them and removing the keys. While this duty protects the dealership from loss of inventory, it is not a great leap to find that it may also serve to protect the public from the effects of theft, including the injuries and damages that tragically and needlessly resulted in this case. The evidence offered in opposition to summary judgment shows that Waller-Singer responded to the prior incidents of theft and vandalism by implementing a key control policy to secure its vehicles. A trier of fact might reasonably determine that Waller-Singer's failure to follow its key control procedures was a breach of its duty to secure its automobiles and that this breach was a cause of the accident *14 that occurred as Scott drove away from the dealership in the stolen Tahoe.
Other courts outside our state have looked at the particular circumstances to decide whether the intervening act of a thief insulates the owner of a stolen vehicle from liability when the vehicle is involved in an accident. See McClenahan v. Cooley, 806 S.W.2d 767, 774 (Tenn.1991). In McClenahan, supra, a summary judgment in favor of an automobile owner was reversed upon finding that the theft was not necessarily an intervening criminal act that broke the chain of causation. The court recognized that a reasonable person may foresee that theft of an automobile left unattended with the keys available would include an increased risk to the public from careless operation of the stolen vehicle. Imposition of liability would depend on such factors as access to the vehicle due to its location and operational condition, the time of day or night the vehicle was left unattended, or the length of time between the theft and the accident. McClenahan, 806 S.W.2d at 776.
In our world today, crime is not a rare event. It is entirely foreseeable that a stolen vehicle may be used in the commission of other criminal acts and driven in a reckless manner. Certainly, an ease of association exists between the theft of a vehicle and risk of injury to an innocent person from the operation of the vehicle. Unlike the majority, I find that Waller-Singer had a duty to lock its vehicles and secure the keys, that this duty includes the protection of the public from reckless operation of a stolen vehicle, and that Waller-Singer's breach of this duty may be found by a trier of fact to have been a cause of Doris Knicely's death after consideration of all the circumstances of this case. The Knicely family should have its day in court to allow a trier of fact to decide what percentage of fault, if any, should be borne by Waller-Singer for its failure to have secured its vehicle on the night of the theft and accident.
For these reasons, I dissent.

APPLICATION FOR REHEARING
Before WILLIAMS, STEWART, GASKINS, CARAWAY, and DREW, JJ.
Rehearing denied.
WILLIAMS and STEWART, JJ., would grant rehearing.
NOTES
[1] La. R.S. 32:1, et seq.