Judgment rendered February 26, 2025.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 56,095-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

DEMETRICE UNDERWOOD          Plaintiffs-Appellants
AND SHANNON UNDERWOOD,
HUSBAND AND WIFE

versus

GEICO SECURE INSURANCE          Defendants-Appellees
COMPANY, MACK A. HILL,
AND JESSE C. ELDRIDGE

* * * * *

Appealed from the
Fourth Judicial District Court for the
Parish of Ouachita, Louisiana
Trial Court No. 2022-2856

Honorable Jefferson Bryan Joyce, Judge

* * * * *

THE DOWNS LAW FIRM, APC          Counsel for Appellant,
By: Earl Ross Downs, Jr.          Demetrice Underwood
      Earl Ross Downs, III
      Emily Wynn Downs
      Hayden Sierra Downs

THE LAW OFFICES OF STREET & STREET          Counsel for Appellant,
By: Daniel Randolph Street          Shannon Underwood

COOK, YANCEY, KING &          Counsel for Appellees,
GALLOWAY, APLC          GEICO Secure Insurance
By: Jordan B. Bird          Company and Jesse C.
      David L. Wilkes          Eldridge
      Gregg A. Wilkes

COTTON, BOLTON, HOYCHICK
& DOUGHTY, LLP
By:  David P. Doughty

Counsel for Appellee,
Orr Motors of Little
Rock, Inc., d/b/a Sparks
Nissan Kia

LIGHTFOOT, FRANKLIN & WHITE, LLC
By:  Joel Chandler Bailey
     Rachel M. Lary

Counsel for Appellee,
Onstar, LLC

HUDSON, POTTS & BERNSTEIN, LLP
By: Jay P. Adams

MACK A. HILL

In Proper Person

\* \* \* \* \*

Before PITMAN, STONE, and ROBINSON, JJ.

**STONE, J.**

This civil appeal involves a motor vehicle accident and arises from the Fourth Judicial District Court, the Honorable Jefferson Joyce presiding.  The plaintiffs, Demetrice Underwood and Shannon Underwood, appeal the trial court's summary judgment dismissing with prejudice their claims against three of the five defendants, namely: (1) Jesse Eldridge ("Eldridge"), the owner of the vehicle that was stolen and crashed into the plaintiffs' vehicle; (2) Geico Secure Insurance Co. ("Geico"), in its capacity as Eldridge's auto insurer; and (3) Sparks Nissan Kia ("Sparks"), in its capacity as Eldridge's employer.  For the following reasons, we affirm.

## FACTS

The plaintiffs filed suit alleging they were injured in a motor vehicle crash involving their vehicle and a vehicle owned by Eldridge but driven by a car thief, Mack Hill ("Hill").  At the time of the incident, Hill was driving while intoxicated and was the subject of a high-speed police chase for stealing Eldridge's vehicle.  Hill had already caused one collision moments before he rammed the stolen vehicle into the plaintiffs' vehicle.  Eldridge had left the motor of his personal vehicle running with the doors apparently unlocked in the parking lot at his place of employment, Sparks in Monroe, Louisiana.  This gave Hill the opportunity to steal the vehicle.  However, Eldridge testified that he had the key fob in his pocket and had tried to lock the vehicle remotely and thought he had successfully done so.  Eldridge actually witnessed Hill stealing the vehicle and quickly reported it stolen to the 9-1-1 dispatcher, Officer Erika Spivey ("Ofc. Spivey") of the Monroe Police Department; Eldridge also advised there was a loaded pistol in the (unlocked) center console of his vehicle.

Ofc. Spivey testified regarding the pistol in the car as follows:

Q. OK. And then let me ask this. In one of the tapes, I believe I overheard Mr. Eldridge, the owner of the vehicle, say there was a pistol in the console. Do you remember that?
A. Yes.
Q. And does that do anything to the nature of the pursuit or the seriousness of it?
A. Yes.
Q. Explain.
A. He could have— Like if Mr. Eldridge didn't tell us that, the guy that had stole [sic] the vehicle could, you know, start shooting at my officers. So when you hear me say, "Hey, there's a gun in the vehicle," that's for her to tell the officers there's a gun in the console. So they'll know what they're— You know, *in case they do stop him and they approach the vehicle*, they have their safety, you know, that they know, they approach him because there's a gun in the vehicle. *You don't know whether he's reached in the console and gotten the gun out to shoot at them*. You don't know. (Emphasis added.)

Ofc. Spivey also explained that it was the supervisor on duty who had the authority to stop the high-speed pursuit but could not remember which supervisor was on duty at the time of the incident. She further advised that plaintiffs' counsel(s) could contact Captain Vince Brown ("Capt. Brown") to possibly ascertain the identity of the supervisor in charge regarding the incident, but the plaintiffs introduced neither an affidavit nor deposition testimony from the supervisor, nor did they introduce an affidavit asserting they had not had an adequate opportunity to discover the identity of the supervisor on duty.

Officer Zachary Osbon ("Ofc. Osbon") of the West Monroe Police Department joined the pursuit and worked the scene of the accident; he created a police report of the incident. Ofc. Osbon testified that "as far as our policy [regarding high-speed pursuits] goes, it basically is on a case-by-case basis and is usually depending on the supervisors…[I]f we get in a pursuit, it would be up to the supervisors given like time of day, traffic and the offense, whether we would pursue or not." Regarding the pistol being in the vehicle during the chase, Ofc. Osbon stated:

2

Q. And with regard to the stolen vehicle, in your experience, if a call comes in that there's a stolen vehicle but then the call is supplemented with additional information that in that stolen vehicle, there is a pistol in an unlocked console by the owner of the vehicle, you know, it's his pistol, does that change the seriousness of the issues involved in whether to pursue or not?

A. Yes, it *could*. But, as you know, it's just based on the information we're given. As far as this one goes, we weren't given that much information actually. We didn't realize that Monroe [Police Department] had actually gotten in a pursuit with the vehicle. I was actually sitting on South 5th at one of our businesses, and they all come in front of me. So like as they're crossing me was whenever our dispatch told us that Monroe was in pursuit with that stolen vehicle. (Emphasis added.)

There is no allegation in any witness testimony that Hill knew about the gun, removed it from the console, or fired it.

Eldridge, Geico, and Sparks filed motions for summary judgment "(MSJs")" arguing that the plaintiffs could not produce prima facie evidence to support their claim. These defendants, in their MSJs (and briefs to this court), cite Louisiana Supreme Court and second circuit jurisprudence holding that the owner or custodian of a vehicle parked on private property is not liable for injuries caused by unauthorized use of the vehicle, even if the owner/custodian left the keys inside. In opposition, the plaintiffs argue that the gun in the console distinguishes these cases; alternatively, the plaintiffs ask that these cases be overruled. In support of their arguments regarding the gun as a (supposedly) distinguishing factor, the plaintiffs submitted the depositions of Eldridge, Ofc. Osbon, and Ofc. Spivey. The trial court granted summary judgment in favor of Eldridge, Geico, and Sparks. The plaintiffs appeal from that judgment, arguing that this court should distinguish or "overrule" that jurisprudence.

**DISCUSSION**

La. C.C.P. art. 966(D)(1) allocates the burden of proof on summary judgment as follows:

> The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law.

To avoid dismissal, the plaintiff in a negligence action must introduce (for the purpose of summary judgment) *prima facie evidence* of the element or elements of that claim challenged by the MSJ. *McGee v. Ashford Place Apartments, LLC*, 54,795 (La. App. 2 Cir. 11/16/22) 351 So. 3d 899. Appellate courts review trial court decisions on summary judgment de novo. *Mandeville P'ship v. A Luxury Transportation, LLC*, 21-1450 (La. App. 1 Cir. 8/24/22), 348 So. 3d 763.

The fountainhead of tort liability is La. C.C. art. 2315(A), which states, "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." In *Rando v. Anco Insulations Inc.,* 08-1163 (La. 5/22/09), 16 So. 3d 1065, 1088, the Louisiana Supreme Court reiterated the essential elements of a negligence action under La. C.C. art. 2315:

> The standard negligence analysis we employ in determining whether to impose liability under La. Civ.Code art. 2315 is the duty/risk analysis, which consists of the following four-prong inquiry: (1) Was the conduct in question a substantial factor in bringing about the harm

4

to the plaintiff, i.e., was it a cause-in-fact of the harm which occurred? (2) Did the defendant(s) owe a duty to the plaintiff? (3) Was the duty breached? (4) Was the risk, and harm caused, within the scope of protection afforded by the duty breached? [(5) Did the plaintiff suffer a compensable injury?][1] Under a duty/risk analysis, all…[five] inquiries must be affirmatively answered for plaintiff to recover.

*Rando* also addressed the overlapping terminology which can be used to express the duty/risk analysis in a negligence action:

Regardless if stated in terms of proximate cause, legal cause, or duty, *the scope of the duty inquiry* [articulated in question "(4)," above] *is ultimately a question of policy as to whether the particular risk falls within the scope of the duty*.
The scope of protection inquiry asks whether the enunciated rule or principle of law extends to or is intended to protect this plaintiff from this type of harm arising in this manner. Although we have unequivocally stated the determination of legal cause involves a purely legal question, this legal determination depends on factual determinations of foreseeability and ease of association. (Emphasis added; internal citations and quotation marks omitted.)

In *Racine v. Moon's Towing*, 01-2837 (La. 5/14/02), 817 So. 2d 21, the plaintiffs sued multiple defendants for wrongful death, including the owner of the land on which the vehicle was parked (a moving company and storage facility). The plaintiffs' 15-year-old son Hunter was trespassing and was killed by a vehicle which he and his 14-year-old brother Logan found parked on the property. They found the vehicle—a flatbed truck—locked with the keys inside. Logan climbed through a partially open window and started the vehicle but then could not turn it off. The boys left it idling in park for 15 to

---

[1] The bracketed language is added to reflect the teaching of *Pitre v. Opelousas Gen. Hosp.*, 530 So. 2d 1151 (La. 1988), which in part denied medical malpractice liability for lack of *compensability* of damages where an unwanted child was born to a woman who previously had a sterilization surgery. The court held that the mother could not recover for the future expenses of rearing the child despite finding all other elements of malpractice being satisfied as to this item of claimed damages.

20 minutes, then Hunter stood on the running board of the truck and reached through the window in another attempt to turn off the vehicle's engine. The vehicle suddenly jumped into gear and began moving; it pinned Hunter against a fence and killed him. The parents sued the owner of the land on which the vehicle was stored. The court held that the "mere act of leaving the keys in a vehicle does not make the owner liable for injuries caused by someone that uses the vehicle without authorization," *and granted summary judgment for defendant*.

In *Humphrey v. Balsamo*, 40,200 (La. App. 2 Cir. 11/8/05), 914 So. 2d 1217, this court affirmed a judgment (rendered after trial on the merits) which dismissed the plaintiffs' claims arising out of a motor vehicle accident. There, as here, the plaintiffs' vehicle was struck by a thief driving a stolen vehicle which had been left parked on private property with the keys inside. On appeal, the parties disputed which standard of review applied— *de novo* or manifest error. Citing the "well-settled" rule illustrated in *DeCastro v. Boylan,* 367 So.2d 83 (La. App. 4 Cir. 1979), *writ denied,* 369 So. 2d 458 (La.1979) and reiterated in *Racine*, *supra*, we held that the judgment had to be affirmed under either standard. This court so held even though the vehicle owner "admittedly left a set of keys in the vehicle, parked outside of the designated parking lot, had knowledge of some prior thefts and vandalism, and had sought better security for the parking." *Id*. at 1221. We explained:

> Those acts do not make him liable for injuries caused by someone who stole and drove his vehicle without authorization. The cause of plaintiffs' injuries was the thief's deliberate act of stealing Balsamo's van which he/she negligently rammed into the rear of the vehicle occupied by unfortunate plaintiffs.

*Id.* We upheld that principle in *Knicely v. XYZ Ins. Co.*, 43,250 (La. App. 2 Cir. 9/17/08), 997 So. 2d 8, 9, *writ denied*, 08-2729 (La. 1/30/09), 999 So. 2d 758. Therein we affirmed summary judgment in favor of a defendant car dealership from which a vehicle was stolen. It was part of the dealership's inventory and was parked on the sales lot and left unattended with the keys left inside; that is how it was stolen. The thief crashed the stolen vehicle into the plaintiffs' vehicle, killing Doris Kathryn Knicely, a passenger of the plaintiffs' vehicle. The plaintiffs sued the dealership (among others) in tort. As previously mentioned, their claims were dismissed on summary judgment, and this court affirmed that judgment of dismissal.

The plaintiffs ask this court to overrule its precedent established in *Knicely* and adopt the dissent therein, which argued that *Racine* and *Humphrey* should be distinguished on the ground that the defendant vehicle owner was a car dealer—as opposed to a moving/storage business (*Racine*) or an individual's personal vehicle parked at his workplace (*Humphrey*). However, unlike *Knicely*, the instant case does not involve a vehicle in the dealership's inventory; rather, like *Humphrey*, the instant case involves an employee's vehicle parked at his place of employment. Thus, even if the *Knicely* dissent had been the *Knicely* majority, *Knicely* would not support liability on the facts of the instant case.

The plaintiff also cites *Blanchard v. Mitchell*, 17-444 (La. App. 3 Cir. 6/12/17), 233 So. 3d 719, *writ denied,* 17-1372 (La. 11/6/17), 228 So. 3d 738, which arguably contradicted the Louisiana Supreme Court precedent of *Racine*, *supra*. Furthermore, a different panel of the third circuit sternly overruled this decision less than six months later in *Blanchard v. Hicks*, 17-

1045 (La. App. 3 Cir. 5/2/18), 244 So. 3d 875, 879, *writ denied*, 18-0829 (La. 9/21/18), 252 So. 3d 908.

In *Blanchard v. Mitchell, supra*, the defendant filed a MSJ (presumably citing *Racine, supra*) and the trial court denied it. The defendant sought a supervisory writ from the third circuit, which denied the writ application in a published opinion. The court relied on La. R.S. 32:145, which governs the parking of vehicles *on public roads* only, as a basis for applying the doctrine of negligence per se. This application of the statute purportedly distinguished *Racine*, which involved a vehicle parked *on private property*. The statute, which is part of the Highway Regulatory Act,[2] provides:

> No person driving or in charge of any motor vehicle shall permit it to stand unattended without first stopping the motor, locking the ignition, removing the key, and effectively setting the brake thereon, and, when standing upon any grade, *turning the front wheels to the curb or side of the highway.*

The italicized language in the above quote demonstrates that the statute presupposes that the vehicle is being parked on a public road. This interpretation was affirmed in *DeCastro, supra*, and *Knicely, supra*.

As previously stated, the plaintiffs fail to mention the third circuit's more recent decision in *Blanchard v. Hicks, supra*, which also involved the theft of a vehicle parked on a public road with keys inside. (This case, though involving a plaintiff of the same surname, concerned a different incident and different parties.) This decision overruled *Blanchard v. Mitchell, supra*, and held that the owner/rightful operator of a vehicle who

---

[2] La. R.S. 32:145 was originally enacted in 1962 and has not been amended. Therefore, it antedates *Racine, supra, Humphrey, supra*, and *Knicely, supra*.

parks it with the keys left inside is not "at fault" if a thief steals the vehicle and causes injury to other people—even if the vehicle was so parked on a public roadway. In other words, *Blanchard v. Hicks* stands for the proposition that La. R.S. 32:145 does not serve as a basis for applying the doctrine of negligence per se in such cases.

In this case, the plaintiffs argue that the presence of the pistol distinguishes the existing jurisprudence. To establish valid ground for distinguishing *Racine*, *supra*, and its progeny, the plaintiffs' burden requires prima facie evidence that the pistol's presence was a substantial factor in causing the wreck. As evidentiary support, the plaintiffs rely on the above-quoted testimony of Ofcs. Spivey and Osbon.

In the alternative, the plaintiffs argue that this court should overrule its prior decisions, reject the authority of *Racine*, and adopt the dissent in *Knicely* (which argued for distinguishing *Racine* as to a *car dealership's liability* in connection with vehicle stolen from the car dealership's inventory).[3]

The existing jurisprudence cannot be distinguished from the instant case. That is because the plaintiffs have not shown that the gun was an empirical cause (i.e., cause-in-fact) of their injuries. Because the gun was not a cause-in-fact of the plaintiffs' injuries, it cannot possibly be a legal cause of their injuries.[4] Both elements of causation are necessary to the prima facie case of negligence, but the plaintiffs have not introduced prima facie proof of either. The plaintiffs' evidence shows merely that the gun

---

[3] Unlike the instant case, *Knicely* did not involve a dealership employee's liability in connection with his personal vehicle stolen while parked on car dealership property.

[4] *Rando, supra.*

9

"could" have changed the vehicular pursuit in some unspecified way: this *does not* and *cannot* constitute prima facie evidence of causation.[5]  In effect, Ofc. Spivey merely stated that the known presence of the gun would increase the caution with which the officers would approach Hill if he stopped the vehicle.  Likewise, Ofc. Osbon testified that information about a gun being in the vehicle *could* change the seriousness of the issues involved in whether to pursue or not; he did not testify that it likely *did* change anything in this case.  In sum, the plaintiffs introduced no summary judgment evidence: (1) that the police pursuit was initiated or maintained because of the gun; (2) that the pursuit was faster, longer, or more aggressive because of the gun; or (3) that the crash was in any way more likely because of the gun.[6]

Furthermore, the officers both testified that the respective supervisors on duty would have made the command decisions concerning the pursuit.  Ofc. Spivey specifically advised plaintiffs' counsel to contact Capt. Brown to potentially ascertain the identity of the Monroe Police Department supervisor in charge of the pursuit.  However, no mention of plaintiffs'

---

[5] The deposition transcripts suggest that plaintiffs' counsel made a strategic decision to avoid asking Officer Osbon or Officer Spivey any question calling for definitive testimony regarding whether the presence of the gun (more likely than not) did cause or intensify the pursuit.  Rather, the question posed to Officer Spivey regarding the gun was: "And does that do anything to the nature of the pursuit or the seriousness of it?"  Similarly, plaintiffs' counsel asked Officer Osbon: "does that [the gun] change the seriousness of the issues involved in whether to pursue or not?"  The responses to these vague questions alluded to the likelihood of plaintiffs' counsel getting definitive answers that they did not want if they pressed further.  Accordingly, plaintiffs' counsel appears to have consciously opted to avoid further questioning on this point.

[6] There is neither evidence Hill fired the weapon, nor that he was even aware of its presence in the vehicle, nor that it otherwise discharged during the episode, nor that it was ever removed from the console during the chase.

10

counsels making such inquiry is made anywhere in plaintiffs' summary judgment evidence.

Pursuant to the binding authority of *Racine*, *supra*; *Humphrey*, *supra*; *Knicely*, *supra*; —and persuasive jurisprudence (*Decastro*, *supra*; *Blanchard v. Hicks*, *supra*)—this court must affirm the summary judgment dismissing the plaintiffs' claims with prejudice. This court cannot contradict such a long, well-established series of its own decisions, nor the binding authority of *Racine*. Moreover, the facts of this case fit squarely within the policy of *Racine* and its progeny: the victim of a motor vehicle theft should not be held liable to victims of the thief's substandard driving of that vehicle. The mere inactive presence of a firearm makes no difference.

## CONCLUSION

The judgment of the trial court is **AFFIRMED**. All costs of this appeal are to be taxed to the plaintiffs.