STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

CA 17-1045


CHRISTOPHER BLANCHARD

VERSUS

DEMETRIUS J. HICKS, ET AL.


**********

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 257,487
HONORABLE PATRICIA EVANS KOCH, DISTRICT JUDGE

**********

**JOHN E. CONERY**
**JUDGE**

**********

Court composed of Sylvia R. Cooks, Marc T. Amy, and John E. Conery, Judges.

**Cooks, J. dissents and assigns reasons.**

                                                              **AFFIRMED.**

**Brian M. Caubarreaux**
**Emily G. Meche**
**Wesley K. Elmer**
**Amira M. Roy**
**Brian Caubarreaux and Associates**
**Post Office Box 129**
**Marksville, Louisiana  71351**
**(318) 253-0900**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
     **Christopher Blanchard**


**Bradley John Gadel**
**Bradley J. Gadel, APLC**
**728 Jackson Street**
**Alexandria, Louisiana  71301**
**(318) 448-4406**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
     **Demetrius J. Hicks**
     **GoAuto Insurance Company**

**CONERY, Judge.**

The trial court granted summary judgment in favor of the defendants, GoAuto Insurance Company (GoAuto), and its insured, Demetrius J. Hicks (Mr. Hicks), dismissing the plaintiff Christopher Blanchard's claim for damages allegedly sustained after the patrol car he was driving was struck by Mr. Hicks's vehicle. An unknown thief had stolen the Hicks's vehicle and had abandoned the vehicle just before the collision while the Hicks's vehicle was in gear and still running. Mr. Blanchard appeals. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

Mr. Blanchard filed suit against Mr. Hicks and his insurer, GoAuto, claiming that he was rear ended by a truck owned by Mr. Hicks and insured by GoAuto. Mr. Hicks and GoAuto denied liability and claimed in its motion for summary judgment that Mr. Hicks's truck had been stolen by an unknown thief. It claimed the unknown thief abandoned the truck while it was in gear and still moving, thus causing Mr. Hicks's truck to collide into the rear of Mr. Blanchard's vehicle, and causing the alleged damages to Mr. Blanchard.

The following facts are undisputed. On August 5, 2016, Mr. Hicks, who is a carpenter and subcontractor, parked his truck in front of a home he was inspecting. Mr. Hicks and his helper exited the truck, leaving the keys in his vehicle with the engine and air conditioning running and the door unlocked. Mr. Hicks testified in both his deposition and affidavit submitted in support of his motion for summary judgment that no longer than four or five minutes had elapsed when the helper noticed a man sitting in the driver's seat of Mr. Hicks's truck. He alerted Mr. Hicks, who quickly walked to the driver's side door. Before Mr. Hicks could grab the handle of the truck door, the unknown thief looked at Mr. Hicks and drove off. Mr.

Hicks began chasing the truck. Mr. Blanchard stopped his police unit at a red light and was waiting for the light to change. He was not aware of the stolen truck behind his police vehicle.

Mr. Hicks saw his truck stop about six feet behind the police car. The passenger door opened, and the unknown thief jumped out and took off running. Mr. Hicks saw his truck begin to slowly roll forward and strike the back of the police car occupied by Mr. Blanchard. The unknown thief has never been apprehended.

After being hit by Mr. Hicks's truck, Mr. Blanchard called the police station, which can be seen from the intersection, and reported the traffic accident. At the same time, Mr. Hicks was knocking on the passenger window and waving his arms to alert Mr. Blanchard to the fact that his truck was stolen, and the thief was getting away. After learning that the truck had been stolen Mr. Blanchard then made a second radio call for backup. None of the officers pursued the unknown thief because he had already fled the scene. Mr. Hicks subsequently filed a formal report with the Alexandria City Police stating that his truck was stolen before the accident by an unknown thief.

Mr. Blanchard admitted in his deposition that he had no facts to contradict Mr. Hicks's claim that his truck was stolen. Both Mr. Hicks's statement of uncontested facts and the deposition filed in support of the motion of the summary judgment stated that the door to his truck was closed, the windows were up, and the air conditioner was on when he and his helper left the truck unattended for approximately four to five minutes. The trial court mentioned in its oral reasons for ruling that common sense would dictate that during daylight hours on August 5, 2016 in Alexandria, La., Mr. Hicks would have closed his truck door to allow his air conditioner to keep the truck cool while he made his inspection.

2

The only evidence submitted into the record filed in support of the motion for summary judgment was filed on behalf of Mr. Hicks and GoAuto. The supporting documentation included the March 17, 2017 affidavit of Mr. Hicks and transcripts of the May 23, 2017 deposition testimonies of Mr. Hicks and Mr. Blanchard. In his opposition to the motion for summary judgment, Mr. Blanchard did not submit any documentation to dispute the facts stated in Mr. Hicks's affidavit and deposition.

The trial court granted the motion for summary judgment for oral reasons assigned and dismissed Mr. Blanchard's claims with prejudice. A judgment was signed by the trial court on September 26, 2017, granting the motion for summary judgment on behalf of Mr. Hicks and GoAuto, dismissing Mr. Blanchard's claims with prejudice, and designating the judgment as final pursuant to La.Code Civ.P. art. 1915(B)(1). Mr. Blanchard now timely appeals the trial court's judgment.

## ASSIGNMENT OF ERROR

Mr. Blanchard asserts one assignment of error on appeal:

> The Trial Court erred in granting defendants Motion for Summary Judgment in light of the defendant-driver's testimony that he violated Louisiana Revised Statute 32:145 by leaving his vehicle unattended with the keys in the ignition.

### Standard of Review

Appellate courts review motions for summary judgment de novo, using the identical criteria that govern the trial court's consideration of whether summary judgment is appropriate. *Samaha v. Rau*, 07-1726 (La. 2/26/08), 977 So.2d 880. The reviewing court, therefore, is tasked with determining whether "the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(A)(3).

Louisiana Code of Civil Procedure Article 966(D)(1) and (2) further provides:

(1) The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law.

(2) The court may consider only those documents filed in support of or in opposition to the motion for summary judgment and shall consider any documents to which no objection is made. Any objection to a document shall be raised in a timely filed opposition or reply memorandum.

In *Roy v. Kyrles, Inc.*, 07-1605 (La.App. 3 Cir. 5/14/08), 983 So.2d 975, 978, a panel of our court held that the legislature further clarified the burden of proof by enacting La.Code Civ.P. art. 966(C)(2) (now 966(D)(1) and (2)), stating:

This amendment parallels the language of *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The amended article places the initial burden of proof on the mover of the motion for summary judgment. If the mover meets this initial burden, the burden of proof then shifts to the nonmoving party that has the burden of proof on this particular issue at trial. This nonmoving party then must put forth evidence that shows he or she will be able to meet that burden at trial. If the nonmoving party cannot, then the motion for summary judgment should be granted. Marist & Lemmon, Louisiana Civil Law Treatise: Civil Procedure § 6.8 (1999).

## LAW AND DISCUSSION

In his sole assignment of error on appeal, Mr. Blanchard claims that the trial court erred in granting summary judgment to Mr. Hicks and GoAuto because Mr. Hicks violated La.R.S. 32:145 "by leaving his vehicle unattended with the keys in

4

the ignition." Mr. Blanchard claims there is no material issue of fact that Mr. Hicks

"failed to uphold his statutory duty."

Louisiana Revised Statutes 32:145 provides:

No person driving or in charge of any motor vehicle shall permit it to stand unattended without first stopping the motor, locking the ignition, removing the key, and effectively setting the brake thereon, and, when standing upon any grade, turning the front wheels to the curb or side of the highway.

The trial court, in anticipation of either a writ or what turned out to be a final

judgment, and thus an appeal of this issue, sought to clarify the application of La.R.S.

32:145 to the uncontested facts of this case and stated:

Because like you said, to do what Mr. Hicks did, so many of us do do [sic]. You leave your car running because it's hot as heck in August and you go walk someplace for five minutes and then a thief comes and it's clear, nobody is in dispute about it, it was a thief, an uninvited guest, he did not know them[.]
        ….

You know, that's what's unexpected for the owner of the car. I am going to go ahead and grant summary judgment because it just – it seems of some common sense, however, I understand the arguments you're giving, Ms. Meche, it [sic] that an open invitation, you have your car running with your keys in it – not a car open, keys are in it but now it's even running so did it jump yet another step. However, what Mr. Hicks did is what so many of us do, is like where is that line for us to – as car owners or anything else, where does it go. But I'm going to grant the summary judgment because it seems to me like Racine [*v. Moon's Towing*, 01-2837, (La. 5/14/02), 817 So.2d 21] however if they are changing it in the Third Circuit and moving on up to do something else, let them decide on this case to say, okay, what are these facts and where does it draw the line, is it because you left the car unlocked and the keys sitting on the dash, in the ignition, or because it's running, to know where it goes from there. Because it sounds like in this case Mr. Hicks even tried to run the man down, even waving to the police officer that the darn car ended up running into in order to try to do some steps. So seems to me as an owner of the vehicle Mr. Hicks actually did more things versus just watching the thief drive off, he chased him down to try to stop the vehicle and save it from doing the very thing it did which is cause an accident. So for that [sic] reasons I'm going to grant summary judgment because I think the owner in this part, yes, stepped out for five minutes but then he went chasing down the car to try to

5

prevent an accident from happening. So let's see what the Third Circuit does with me.

Mr. Blanchard failed to submit any affidavits, deposition testimony or interrogatory answers that create any genuine issue of material fact which would require a trial on the merits. La.Code Civ.P. art. 967(B).[1]

As found by the trial court, the law is well settled that a violation of La.R.S. 32:145 by an individual is not negligence per se and does not extend to liability for an accident that occurs when an unknown thief steals an unlocked vehicle and causes injuries to a third party. In *Racine v. Moon's Towing*, 01-2837, p. 6 (La. 5/14/02), 817 So.2d at 25-26, the supreme court discussed the history of the cases involving La.R.S. 32:145 and stated:

> However, it is well settled under Louisiana jurisprudence that the mere act of a motorist in leaving keys in a car does not create liability on the part of the motorist where a thief steals the car and injures a third party. For example, in *Roach v. Liberty Mutual Insurance Co.,* 279 So.2d 775, 777 (La.App. 1st Cir.), *writ denied,* 281 So.2d 756 (La.1973), the court stated:
>
>> Obviously the motion for summary judgment was based on the well established rule in Louisiana that the leaving of ignition keys in an unattended automobile does not of itself constitute negligence on the part of the owner and he owes no duty to the public at large against the risk of a thief's negligent operation of the automobile. *Midkiff v. Watkins*, 52 So.2d 573 (1st La.App.1951); *Town of Jackson v. Mounger Motors*, 98 So.2d 697 (1st La.App.1957); 22 La.L.Rev. 886-889 (1962). Even if a motorist leaves his vehicle unattended in violation of the so-called "lock statute" (L.R.S.32:145), it has been held that he is nevertheless not responsible for the carelessness of a thief who steals the vehicle and while operating it causes injury to another. *Call v. Huffman*, 163 So.2d 397,

---

[1] Louisiana Code of Civil Procedure Article 967(B) states:

When a motion for summary judgment is made and supported as provided above, an adverse party may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided above, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be rendered against him.

6

(2nd La.App. 1964), *writ refused,* 246 La. 376, 164 So.2d 361 (1964); *Berluchaux v. Employers Mutual of Wausau,* 194 So.2d 463 (4th La.App.1967), *writ refused,* 250 La. 533, 197 So.2d 79 (1967).

Counsel for Mr. Blanchard argued that *Racine* can be distinguished, as the vehicle in that case was parked on private property and therefore the provisions of La.R.S. 32:145, the "lock statute," did not apply. However, the supreme court further noted in *Racine* that although the facts in *Roach* were not the same as in *Racine,* "the same principle is applicable: the mere act of leaving keys in a vehicle does not make the owner of the vehicle liable for injuries caused by someone who uses that vehicle without authorization." *Racine,* 817 So.2d at 26.

Mr. Blanchard's counsel further cited this court's recent denial of a supervisory writ in *Blanchard v. Mitchell,* 17-444, (La.App. 3 Cir. 6/12/17), 233 So.3d 719, *writ denied,* 17-1372, (La. 11/6/17), 228 So.3d 738. In *Blanchard,* Troy Rogers was acting within the course and scope of his employment with Robin Ewing Pool Supplies, Inc., when he went to service a customer's pool. Mr. Rogers parked his company's vehicle on the street in front of the customer's home and left the keys in the vehicle for some twenty to twenty-five minutes while he was servicing the pool. While the vehicle was parked unattended on the street, Michael Mitchell entered the vehicle without permission or authority and drove away. Upon hearing the engine start up, Mr. Rogers gave chase and later reported the vehicle stolen. While Mr. Mitchell was driving the vehicle, he was involved in an accident with the plaintiff, Steve Blanchard, who allegedly was injured through the fault of Mr. Mitchell.

Mr. Blanchard sued Robin Ewing Pool Supplies, and its insurer, Valley Forge Insurance, who sought summary judgment. Unlike this case, the trial court in

7

*Blanchard* denied the defendants' motion for summary judgment and the defendants then filed a supervisory writ to this court.

A panel of this court upheld the trial court's ruling and denied the writ on the basis that the fourth circuit case *DeCastro v. Boylan*, 367 So.2d 83,84 (La.App. 4 Cir), *writ denied*, 369 So.2d 458 (La.1979), held that La.R.S. 32:145 "does not go as far as to protect a plaintiff from being negligently injured by one who has stolen his car with the keys left in it[,]" was not "binding authority for this court." *Blanchard*, 223 So. 3d at 719.

Respectfully, the panel's writ decision in *Blanchard* failed to discuss over fifty years of contrary jurisprudence holding that La.R.S. 32:145 does not impose liability on a vehicle owner when the vehicle is stolen and the thief causes injury to a third party by recklessly operating the vehicle. The jurisprudential history was extensively discussed in *DeCastro*. In *DeCastro*, the unlocked vehicle at issue was parked in front of a construction site with the keys in the ignition. The relators contended that the keys were left in the car "so that it could be moved from the front of the work site in case other materials or laborers arrived." *DeCastro*, 367 So.2d at 83. Shortly thereafter, the car was stolen by an unknown thief and the theft was immediately reported to the police. The police spotted the stolen vehicle, began a pursuit, and ordered a roadblock to intercept the stolen vehicle. The alleged thief attempted to run the roadblock and crashed into Deputy DeCastro's vehicle, injuring him.

In affirming the trial court's ruling granting summary judgment in favor of the defendants, a panel of the fourth circuit in *DeCastro*, as did the supreme court in *Racine*, quoted *Roach*, 279 So.2d 775, which traced the history of La.R.S. 32:145 back to the case of *Call v. Huffman*, 163 So.2d. 397, (La.App 2 Cir 1964), *writ*

8

*refused*, 164 So.2d 361 (1964). *Call* originally discussed the application of La.R.S. 32:145. Relying on both *Call* and the subsequent 1967 case of *Berluchaux*, 194 So.2d 463, the court in *Roach* also found that La.R.S. 32:145 did not change the law and held an individual that is responsible for a "violation of the so-called 'lock statute', . . . is nevertheless not responsible for the carelessness of a thief who steals the vehicle and while operating it causes injury to another." *Roach*, 279 So.2d at 777.

The *Blanchard* writ panel did not cite or discuss *Racine*. The supreme court denied writs in *Blanchard*. However, the denial of a writ by the supreme court does not create a binding precedent. *See St. Tammany Manor, Inc. v. Spartan Bldg. Corp.*, 509 So.2d 424, 428 (La.1987) ("[a] writ denial by this court has no precedential value"). *See also Saucier v. Washington*, 17-556, (La.App. 3 Cir. 9/20/17), 229 So.3d 19.

The supreme court decision in *Racine* is the latest pronouncement by the state's highest court on this issue. The *Blanchard* case is an anomaly. *See Eaglin v. Eunice Police Dep't*, 17-127 (La.App. 3 Cir. 10/04/17), 228 So.3d 280.

In *Doerr v. Mobil Oil Corp.*, 00-947, pp. 13-14 (La. 12/19/00), 774 So.2d 119, 128-29, *reh'g granted on other grounds*, 00-947, (La. 3/16/01), 782 So.2d 573, the supreme court discussed "the two sources of law in Louisiana: legislation and custom. *See* La.Civ.Code art. 1." The Louisiana Supreme Court in *Doerr* also affirmed "that our civilian tradition does not recognize the doctrine of *stare decisis* in our state," and then discussed the application of jurisprudence under the civilian tradition and stated:

> Under the civilian tradition, while a single decision is not binding on our courts, when a series of decisions form a "constant stream of uniform and homogenous rulings having the same reasoning," *jurisprudence constante* applies and operates with "considerable persuasive authority." James L. Dennis, *Interpretation and Application*

9

*of the Civil Code and the Evaluation of Judicial Precedent*, 54 La. L.Rev. 1, 15 (1993). Because of the fact that "one of the fundamental rules of [the civil law tradition] is that a tribunal is never bound by the decisions which it formerly rendered: it can always change its mind," 1 Marcel Planiol, *Treatise on the Civil Law* § 123, (La. State Law Inst. trans.1959) (12th ed.1939), prior holdings by this court are persuasive, not authoritative, expressions of the law. *See* Yiannopoulos, *supra,* at § 35, p. 54. Thus, it is only when courts consistently recognize a long-standing rule of law outside of legislative expression that the rule of law will become part of Louisiana's custom under Civil Code article 3 and be enforced as the law of the state. *See* La.Civ.Code art. 3.

*Doerr*, 774 So.2d at 128-29. *See also Borel v. Young*, 07-419 (La. 11/27/07), 989 So.2d 42, reh'g *granted*, 07-419, (La.7/1/08), 989 So.2d 53, 65.

We agree with the long line of Louisiana cases holding that "the mere act of leaving keys in a vehicle does not make the owner of the vehicle liable for injuries caused by someone who uses that vehicle without authorization." *Racine*, 817 So.2d at 26.

In this case, not only did the unknown thief steal Mr. Hicks's truck, but he then abandoned the truck after he stopped behind Blanchard's police unit, leaving the truck in drive such that it collided into the rear of the Blanchard vehicle. Mr. Hicks's, upon seeing that his truck had been stolen, did everything he could to apprehend the unknown thief, including personally chasing him down the street on foot.

We agree with the able trial court's analysis that there was no independent fault by Mr. Hicks. We find that it was the fault of the unknown thief that caused Mr. Blanchard's alleged injuries and damages. We affirm the trial court's ruling granting summary judgment in favor of GoAuto and its insured, Mr. Hicks.

## CONCLUSION

For the foregoing reasons, the September 26, 2017 judgment of the trial court dismissing all claims by plaintiff Christopher Blanchard against GoAuto Insurance Company, and its insured, Demetrius J. Hicks, is affirmed in its entirety.  All costs of this appeal are assessed to Christopher Blanchard.

**AFFIRMED.**

COURT OF APPEAL, STATE OF LOUISIANA

THIRD CIRCUIT

17-1045

CHRISTOPHER BLANCHARD

VERSUS

DEMETRIUS J. HICKS, ET AL.

**COOKS, J., Dissents.**

This case is not ripe for summary disposition as a matter of law because the law is not clear. The lack of certainty in the law has been highlighted by our brethren on the supreme court and in our appellate courts as more fully discussed below.

The majority bases its affirmance on the supreme court's holding in *Racine* wherein the high court cites a long line of Louisiana jurisprudence for the proposition that: "the mere act of a motorist in leaving keys in a car does not create liability on the part of the motorist where a thief steals the car and injuries a third party." But, the holding in *Racine* does not dispose of the factual matter presented in this case. *In Racine the vehicle was not parked on a public street or roadway and thus did not fall under the ambit of La.R.S. 32:145*[1], **unlike the vehicle in this case,** which was parked on the public roadway with the keys in the ignition, the motor running, and the doors unlocked. The owner of the vehicle did not remain near his truck but was busy inspecting his property. As might be expected in today's world, a thief stole the truck and during his attempted get-a-way, jumped

---

[1] "No person driving or in charge of any motor vehicle shall permit it to stand unattended without first stopping the motor, locking the ignition, removing the key, and effectively setting the brake thereon, and, when standing upon any grade, turning the front wheels to the curb or side of the highway."

1

out of the truck in the roadway behind a police car driven by Officer Blanchard. The abandoned stolen truck proceeded forward and struck the patrol car.

*Racine* relied in part on a 1973 appellate case, *Roach v. Liberty Mutual Ins. Co.*, 279 So.2d 775 (La.App. 1 Cir. 1973), which held the owner of a vehicle has no duty to the public at large against the risk of a thief's negligent operation of the automobile. *Roach* relied on language the court cited from a second circuit case, *Call v. Huffman*, 163 So.2d 397 (La.App. 2 Cir. 1964), *writ refused*, 164 So.2d 361 (La. 1964) and a fourth circuit case, *Berlochaux v. Employers Mutual of Wausau*, 194 So.2d 463 (La.App. 4 Cir. 1967), *writ refused*, 197 So.2d 79 (La. 1967). In *Roach*, also a summary judgment case, the car was driven by an unauthorized person who it appears stole the car. Notably in Roach, the defendant renter of the stolen vehicle did not say she left the keys in the car, she said the car was parked on Avenue L and someone stole it and wrecked. *There was no evidence that Mrs. McLaughlin, who was renting the car, left the keys in the car or otherwise violated La.R.S. 32:145*. The evidence accepted on summary judgment was simply that the car was stolen while parked on the street. In *Midkiff v. Watkins*, 52 So.2d 573 (La.App. 1 Cir. 1951)*, cited in *Roach* and in *Racine* quoting *Roach*, the car was parked in a church parking lot. Likewise, in *Town of Jackson v. Mounger Motors*, 98 So.2d 697 (La.App. 1 Cir. 1957), also cited in *Roach*, the vehicle was parked on a used car lot. In *Call* the car was parked at the Southside Drive Inn, *it was not left on the public street*. Thus, **these cases did not actually involve a violation of the statute**.

When the fourth circuit first decided the facts alleged in *Berlochaux* the plaintiffs averred the vehicle was stolen while parked on private property. The court of appeal upheld dismissal of the suit. After that judgment became final

plaintiffs filed a new suit alleging the vehicle was on the public street when it was stolen. In dismissing that suit the appellate court relied on previous appellate decisions that held "our jurisprudence has long been settled to the effect that merely leaving keys in a car is not a proximate cause of injuries received through the subsequent negligence of a thief." *Berlochaux*, 194 So.2d at 465. The appellate court in *Berlochaux*, back in 1967, pre-dating comparative fault, made short shrift of plaintiff's argument by simply stating that the "long-settled rule" was based on the "general principles of negligence and due care [ ] applied in [their] prior decision and any issue concerning its validity or application cannot be reconsidered now." *Id*.

The majority in this case takes issue with a recent panel of this court's decision in *Blanchard v. Mitchell*, 17-144 (La.App. 3 Cir. 6/12/17), 233 So.3d 719, *writ denied*, 17-1372, (La.11/6/17), 228 So.3d 738. The majority faults the panel for failing to follow *Racine* or at least mention it in their decision. In that case the panel denied a writ challenging the trial court's denial of a motion for summary judgment in a case involving a plaintiff injured when he was struck by a stolen car. The pool guy left his keys in his car, *parked on the street*, while servicing a customer's pool. The panel reasoned that summary judgment was rightly denied because the Plaintiff made compelling arguments in favor of finding that a duty to plaintiff is imposed by La.R.S. 32:145, Louisiana's unattended vehicle statute: "In the instant case, we find that the fact finder could reasonably conclude that Mr. Rogers' leaving the keys in the vehicle *contributed* to Plaintiff's accident *to some extent*" (emphasis added). The majority finds this holding is at odds with the "settled jurisprudence" of this state and is at odds with the last pronouncement from our State Supreme Court in 2002 in *Racine*.

3

First, the jurisprudence applicable in *Blanchard v. Mitchell* and in this case is far from "settled." Second, and importantly, the Supreme Court denied writs in *Blanchard v. Mitchell*. Two justices, Crichton and Clark, dissented, saying they would grant the writ to address the important question presented which "has not recently [been] addressed," adding that they "do not find the statute was intended to create a duty to protect third persons from the negligence of unauthorized users of a vehicle." But the supreme court majority's denial of the writ is indicative to me that the remainder of our supreme court justices do not agree with Justice Clark and Justice Crichton's "finding." Third, and of significance, I note *the supreme court **did not cite Racine** as a reason to grant the writ* and overrule the panel in *Blanchard v. Mitchell*. This indicates to me they do not think the panel was wrong. I do not agree with the majority's finding that the panel in *Blanchard v. Mitchell* ignored prior jurisprudence because I believe the existing jurisprudence does not answer the question raised in that case or in this one. I can find no decision by the state supreme court, post comparative fault, that sets the matter straight, ergo the two justices' motivation to grant the writ in *Blanchard v. Mitchell*. I reiterate, a majority of the supreme court denied writs in *Blanchard v. Mitchell* leaving in place the panel of this court's decision to deny writs based on the trial court's reasonable conclusion that *there is the possibility of comparative negligence in the matter.* Apparently, the panel in *Blanchard v. Mitchell* perceives the possibility of a duty under the statute, applying the duty-risk analysis under comparative fault, the possibility of a breach of that duty with resulting injury, and at least some percent of comparative fault for breach of that duty. I maintain this case too, cannot be disposed of on summary judgment for the simple reason that the law on

4

the question at hand is completely unknown because the supreme court has not yet ruled on the matter. *Racine* does not resolve this case.

The supreme court has previously held that: "Duty is a question of law. Simply put, the inquiry is whether the plaintiff has any law—statutory, jurisprudential, or arising from general principles of fault—to support his claim." *Faucheaux v. Terrebonne Consol.* Gov't., 615 So.2d 289, 292 (La. 1993). In *Meany v. Meany*, 94-251 (La.7/5/94), 639 So.2d 229, the supreme court explained the principles involved in determining legal duty for Louisiana tort negligence determinations. "In deciding whether to impose a duty in *a particular case*, the court must *make a policy decision* in light of the unique facts and circumstances presented. *See Socorro v. City of New Orleans*, 579 So.2d 931 (La. 1991)." *Lemann v. Essen Lane Daiquiris, Inc.* 923 So.2d 627 (La. 2006) and cases cited therein (emphasis added).

> When a plaintiff articulates a general rule or principle of law that protects his interests, it is necessary for the court to determine whether the rule is intended to protect him from the particular harm alleged, an inquiry which involves both the duty and causation elements of the negligence formulation. *The court must make a policy determination in light of the unique facts of the case*. Thus, the duty-risk analysis requires the court to take into account *the conduct of each party* as well as *the particular circumstances of the case*. *Socorro v. City of New Orleans*, 579 So.2d 931, 938 (La. 1991). In determining whether to impose a duty in a particular situation, the court may consider various moral, social, and economic factors, including whether the imposition of a duty would result in an unmanageable flow of litigation; the ease of association between the plaintiff's harm and the defendant's conduct; the economic impact on society as well as the economic impact on similarly situated parties; the nature of the defendant's activity; moral considerations, particularly victim fault; and precedent as well as the direction in which society and its institutions are evolving. *Pitre v. Opelousas General Hospital*, 530 So.2d 1151, 1161 (La. 1988); William E. Crow, *The Anatomy of a Tort*, 22 Loy. L.Rev. 903 (1976).

> Finding a duty is dependent upon the "facts and circumstances of the case and the relationship of the parties." *Fox v. Bd. of*

*Supervisors of La. State Univ. and Agric. and Mech. Coll.*, 576 So.2d 978, 981 (La. 1991).

*Meany*, 639 So.2d at 233 (emphasis added).

The trial judge here was moved by the habit of our people to leave the AC running in their vehicles in August while making brief stops in their daily sojurns. Perhaps Hicks had nowhere but the street to park his vehicle (the duty analysis being much easier if he had parked his truck on his own property instead of the public roadway). But when weighing all of the factors articulated in *Meany*, it seems to me there is a strong argument in favor of assessing some degree of fault to Hicks as it was within his power and control to avoid harm to the Plaintiff by removing his keys from his vehicle parked on the public road as the statute requires him to do. While our courts have never extended liability for unauthorized use of a vehicle ***kept on private property*** there is no reason a jury could not find that under the present circumstances Hicks bears some measure of comparative fault for his negligent behavior. I believe this is true not only because he violated the statutory prohibition against leaving his keys in the ignition and his vehicle running while parked on the pubic roadway, thus enabling and even enticing a thief, but also because under a duty risk analysis he breached a duty owed to the public not to make it easy for a thief to steal his vehicle and cause damage to others. At the very least the application of the statute under the instant facts presents a policy question not yet directly answered by our supreme court and it begs to be addressed.

The Plaintiff here, and the plaintiff in *Blanchard v. Mitchell*, assert that violation of the statute imposes liability on the violator. I recognize that the Louisiana State Supreme Court has expressly rejected "negligence per se" *see*

6

*Faucheaux*, 615 So.2d at 292, *citing Weber v. Phoenix Assur. Co. of New York*, 273 So.2d 30 (La. 1973). "The violation of a statute or regulation does not automatically, in and of itself, impose civil liability. Civil responsibility is imposed only if the act in violation of the statute is the legal cause of damage to another." Supra. 292-93. I believe in this case, and in *Blanchard v. Mitchell*, the violation of the statute may well be a legal cause of damage to Officer Blanchard, at least to some degree. The legal cause of damage to officer Blanchard may well be said to be due in part to Hicks' negligent and unlawful behavior in leaving his keys in the car and the motor running while parked on the public roadway. As our state supreme court has held, liability is imposed if the risk at issue falls within the scope of the duty. *Faucheaux*, 615 So.2d at 293.

> *The scope of the duty inquiry is ultimately a question of policy* as to whether the particular risk falls within the scope of the duty. Rules of conduct are designed to protect some persons under some circumstances against some risks. *Gresham v. Davenport*, 537 So.2d 1144, 1147 (La. 1989); Malone, *Ruminations on Cause-in-Fact,* 9 Stan.L.Rev. 60, 73 (1956). The scope of protection inquiry asks whether the enunciated rule extends to or is intended to protect this plaintiff from this type of harm arising in this manner. Crowe, *The Anatomy of a Tort-Greenian, As Interpreted by Crowe Who Has Been Influenced by Malone—A Primer*, 22 Loy.L.Rev. 903 (1976). In determining the limitation to be placed on liability for defendant's substandard conduct, the proper inquiry is often how easily the risk of injury to plaintiff can be associated with the duty to be enforced. *Hill v. Lundin & Associates, Inc.*, 260 La. 542, 256 So.2d 620, 622 (1972).

<u>*Faucheaux*</u>, 615 So.2d at 293-94 (emphasis added).

In another stolen vehicle case the second circuit in *Knicely v. ZYX Ins. Co.*, 43,250 p 8 (La.App. 2 Cir. 9/17/08) 997 So.2d 8, 12, *writ denied*, 08-2729 (La.1/30/09), 999 So.2d 758, (Justices Kimball, Johnson, and Traylor would grant the writ) the court found that even if the car dealership, which had left keys in the vehicle "parked outside the vehicle line," had a duty to lock the vehicle, that duty

"did not include within its scope of protection the risk resulting from Scott's theft and recklessness." Plaintiff argued the dealership was negligent in leaving the keys in the vehicle with the doors unlocked and such was the legal cause of the accident. In that case the plaintiff alleged the dealership had experienced prior thefts and was aware of the risk of a vehicle with the keys left in it being stolen. But in that case the court found La.R.S. 32:145 *did not apply*. Even so, three justices would have granted the writ.

In *Miller v. LAMMICO*, 07-1352 p 9 (La. 1/16/08), 973 So.2d 693, 700, the supreme court recognized: "The general rule of comparative fault requires courts to calculate damages in such a manner that each tortfeasor pays [ ] for that portion of the damage he has caused. La. Civ.Code art. 2323; *Dumas v. State ex rel. Dep't of Culture, Recreation & Tourism,* 02–0563, pp. 11–15 (La.10/15/02), 828 So.2d 530, 537–38." And in *Touchard v. Williams*, 617 So.2d 885, 889-90 (La. 1993) (emphasis added and in original) the supreme court in addressing solidary liability said:

> (**"When the actionable negligence of two tortfeasors contributes in causing harm to a third party, each of them is responsible for the damage. They are solidarily liable."**); *Narcise v. Illinois Cent. R.R. Co.,* 427 So.2d 1192 (La.1983); *Huguet v. Louisiana Power & Light Co.,* 196 La. 771, 200 So. 141 (1941).
>
> . . . .
>
> Alternatively stated, the modern justification for the retention of solidary liability is founded on the notion that *the innocent plaintiff should obtain full compensation from* <u>*any person whose fault was an indispensable factor in producing the harm*</u>. Martha Chamallas, *Comparative Fault and Multiple Party Litigation in Louisiana: A Sampling of the Problems,* 40 La.L.R. 373 (1980). *See also Thorton v. Luce,* 209 Cal.App.2d 542, 26 Cal.Rptr. 393 (1962); Robert A. Steinberg, *The Doctrine of Joint and Several Liability is Properly Concerned with the Rights of Victims rather than the Economic Well– Being of Wrongdoers,* 9:3 L.A.Lawyer 35 (1986).

In discussing the contemporary tort law in Louisiana concerning duty risk, the supreme court explained in *Faucheaux*, 615 So.2d 293-94 (emphasis added):

> The scope of the duty inquiry is ultimately a question of policy as to whether the particular risk falls within the scope of the duty. Rules of conduct are designed to protect some persons under some circumstances against some risks. *Gresham v. Davenport,* 537 So.2d 1144, 1147 (La.1989); Malone, *Ruminations on Cause–in–Fact,* 9 Stan.L.Rev. 60, 73 (1956). The scope of protection inquiry asks whether the enunciated rule extends to or is intended to protect this plaintiff from this type of harm arising in this manner. Crowe, *The Anatomy of a Tort–Greenian, As Interpreted by Crowe Who Has Been Influenced by Malone—A Primer,* 22 Loy.L.Rev. 903 (1976). **In determining the limitation to be placed on liability for defendant's substandard conduct, the proper inquiry is often how easily the risk of injury to plaintiff can be associated with the duty sought to be enforced.** *Hill, supra.*

The ease of association (at least to my mind and a previous panel of this court, as well as perhaps several supreme court justices noted herein) between leaving one's keys in the ignition with the motor running, the vehicle unlocked, parked on the public highway, all while the owner of the vehicle absents himself from the vehicle, and the actions of a thief leaving the scene of his thievery causing injury to another motorist, is not difficult to make. **The purpose of the statute has long been recognized as preventing theft.** *See Call*, **163 So.2d at 400.** Thus, if the owner of the vehicle has a statutory duty under La.R.S. 32:145 to prevent the theft of his vehicle and he violates that duty, the risk of harm to a motoring plaintiff that occurred during the process of the thievery seems to me easy to associate. Hicks' actions in direct violation of his statutory duty seems to me to constitute some degree of fault that "was an indispensable [contributing] factor in producing the harm" to officer Blanchard. *Touchard*, 617 So.2d 890. Thus, Hicks may be responsible for some percent of Blanchard's damages and that

9

determination can only be made by the fact finder after a trial on the merits. As to apportioning fault this court has said:

> In *Watson v. State Farm Fire and Casualty Insurance Co.,* 469 So.2d 967, 974 (La.1985), the supreme court identified factors to be considered when apportioning fault, explaining:
>
> > [V]arious factors may influence the degree of fault assigned, including: (1)whether the conduct resulted from inadvertence or involved an awareness of the danger, (2) how great a risk was created by the conduct, (3) the significance of what was sought by the conduct, (4) the capacities of the actor, whether superior or inferior, and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought. And, of course, as evidenced by concepts such as last clear chance, the relationship between the fault/negligent conduct and the harm to the plaintiff are considerations in determining the relative fault of the parties.

*Thibodeaux v. Comeaux*, 11-127 p 10 (La.App. 3 Cir. 6/15/11), 69 So.3d 674, 681–82.

For these reasons I respectfully disagree with the majority's affirmance of dismissal on summary judgment. I believe we should not engage in making such a far-reaching public policy decision in a summary judgment matter especially where the supreme court has yet to speak and has made at least some indication that it would rule differently. And I believe our modern notions of negligence and comparative fault also point to a different result than was reached in cases dating back to 1967. Such significant public policy decisions should be made only after a full trial on the merits, especially in such cases as these where our modern negligence law directs that such determinations regarding duty risk and comparative fault depend upon each case's unique factual circumstances. Defendants are not entitled to summary judgment as a matter of law. How can any

10

court grant summary judgment *as a matter of law* when the law on the subject is wholly unresolved?  For these reasons I respectfully dissent.